STATE of Missouri ex inf. John C. DAN-
FORTH, Attorney General, Relator,

v.

James J. BUTLER, Respondent.

No. 58941.

Supreme Court of Missouri,
En Banc.

June 9, 1975.

**1**

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Andrew Rothschild, Asst. Attys. Gen., Jefferson City, for relator.

Donald G. Stubbs, Stubbs, Epstein & Mann, Kansas City, for respondent.

John R. Hopkins, Jr., W. Clifton Banta, Jr., Banta, Banta & Hopkins, Charleston, for W. C. Banta, John M. Morris, Jr., Jack Webster and Harvey B. Young, Jr.

HENLEY, Judge.

This is an original proceeding in quo warranto by the State, on the information of the attorney general (relator), to oust James J. Butler (respondent) from the office of member of the labor and industrial relations commission.

It is agreed that pursuant to the authority of § 286.010[1] respondent was appointed a member and chairman of the industrial commission of Missouri by the then governor, Warren E. Hearnes, in June, 1971, for a term ending July 1, 1976, by and with the advice and consent of the senate, and that he qualified, assumed his duties, and thereafter acted as such chairman.

1. References to sections of the statutes are to RSMo 1969, V.A.M.S., unless otherwise indicated.

The question presented is whether respondent has authority to continue in that office for the balance of the term for which he was appointed. He claims that he does.

Relator contends that a 1972 amendment to Article IV of the constitution, V.A.M.S., and implementing legislation adopted in 1974 created a new department of labor and industrial relations and a new commission bearing that name; that since there is no authority in the constitutional amendment for members of the industrial commission to succeed to membership on the new commission the offices thereof were vacant upon creation; that the provision in the implementing legislation that members of the industrial commission succeed to membership on the labor and industrial relations commission is unconstitutional, because it conflicts with the appointive power of the governor granted in §§ 17 and 49 of amended Article IV. He also contends that it was the intent of the amendment and the implementing legislation to, and that they did clearly, abolish the industrial commission and with it the office held by respondent. Respondent, of course, contends otherwise.

In August, 1972, a proposed amendment to the state constitution providing for the organization of the executive branch was submitted to [2] and adopted by the people. By this amendment § 12 and seven other sections of Article IV were repealed and seventeen new sections were enacted in lieu thereof, among which were §§ 12 and 49.

The first extraordinary session of the 77th General Assembly implemented this amendment by the adoption of the Omnibus State Reorganization Act of 1974 (hereinafter reorganization act), effective May 2, 1974.

Section 12 of Article IV, as amended, provides that in addition to the governor and other elective state officers in the executive branch there shall be an office of administration and thirteen named departments.[3] Several of these departments, including the department of labor and industrial relations,[4] were in existence before the adoption of amended § 12, having been created by statute pursuant to the authority of § 12, Article IV, as it existed prior to the 1972 amendment. The last two sentences in amended § 12 read: "Unless discontinued all present or future boards, bureaus, commissions and other agencies of the state exercising administrative or executive authority shall be assigned by law or by the governor as provided by law to the office of administration or to one of the fourteen administrative departments to which their respective powers and duties are germane. The departments enumerated in this section shall be established on July 1, 1974, as successors to the departments in existence at the time of the adoption of this section; except that they may be established by law prior to that date."

As indicated, the 77th General Assembly, pursuant to authority of the amendment, established by law prior to July 1, 1974, the department of labor and industrial relations as the successor to the department of the same name in existence at the time of the adoption of the amendment.

Section 286.010, under which respondent was appointed in 1971, provides that " 'The Department of Labor and Industrial Relations' * * * shall be under the control,

---

2. Submitted by the 76th General Assembly, second regular session, through House Joint Resolution No. 65. See Laws of Missouri, 1971–72, pages 1049 to 1052.

3. It also authorized the creation by law of one more (unnamed) department, making fourteen.

4. This department was first established in 1945 by Chapter 286, under authority of § 12 of Article IV of the 1945 constitution. See Laws of Missouri, 1945, p. 1101.

**4**

management and supervision of a commission to be known and designated as 'The Industrial Commission of Missouri.'" That section, in addition to creating and establishing the named department and the "industrial commission," also provides, inter alia, the number and qualifications of the members of the commission, and for their appointment by the governor with the advice and consent of the senate.

Section 49 of Article IV, also adopted in the 1972 amendment, provides that "[t]he department of labor and industrial relations shall be in charge of a Labor and Industrial Relations Commission." In addition, § 49, as amended, using substantially the same language as § 286.010, provides, inter alia, the same number of commissioners and, with one exception,[5] the same qualifications as § 286.010. The last sentence in § 49 reads: "The labor and industrial [relations] commission shall be the successor to the industrial commission and the terms of members shall be as provided by law for the industrial commission."

By § 8 of the reorganization act (effective May 2, 1974) the legislature, in subsection 1, "created a department of labor and industrial relations to be headed by a labor and industrial relations commission as provided by section 49, article IV Constitution of Missouri." This subsection provides, inter alia, that (1) "All the powers, duties and functions of the industrial commission are transferred * * * to the labor and industrial relations commission and the industrial commission is abolished * * *"; and (2) "Members of the industrial commission on the effective date of this act shall become members of the labor and industrial relations commission and the terms of the labor and industrial relations commission

members shall be the same as provided by law for the industrial commission. Individuals appointed as members of the industrial commission shall serve the remainder of the term to which they were appointed as members of the labor and industrial relations commission."

In the process of reorganization of the executive branch, the department of labor and industrial relations was structured as follows: (1) the division of employment security and the division of workmen's compensation were retained as such in the department; (2) the division of industrial inspection and the division of mine inspection were retained also, but were reduced from division status and transferred to a newly-created inspection section of the department; (3) the board of rehabilitation (previously created by § 287.141 as an auxiliary to the workmen's compensation division) was abolished and its duties and functions assigned to the director of the division of workmen's compensation; and (4) the state board of mediation (created by chapter 295) and the commission on the status of women (created by chapter 186), not previously assigned by law as part of any department, were transferred to this department.

The ultimate question for decision is whether the office of member and chairman of the industrial commission was abolished by the amendment of Article IV in 1972 or the reorganization act in 1974. We hold that it was not abolished.

It has been recognized and said[6] many times over the years that "[i]t is not always easy to determine whether a public office has been abolished. It is not sufficient merely to declare that a particular office is abolished, if in fact it is not abolished, and the duties thereof are continued." Of

---

5. Whereas § 286.010 required that members shall have resided in this state for at least five years immediately prior to appointment, § 49 of the amendment does not specify a residence qualification.

6. The quotations in this paragraph are taken from 63 Am.Jur.2d, Public Officers and Employees, § 37, p. 648. See: State's Prison v. Day, 124 N.C. 362, 32 S.E. 748 (1899); People ex rel. Burby v. Howland, 155 N.Y. 270, 49 N.E. 775 (1898); State ex rel. Taylor v. Cowen, 96 Ohio St. 277, 117 N.E. 238 (1917).

course, "[a]n office is abolished when the act creating it is repealed. But the repeal of the [law] creating an office, accompanied by the re-enactment of the substance of it, does not abolish the office."

■ There is nothing in either § 12 or § 49 of the amendment which clearly abolishes the office of member and chairman of the commission. In support of his position that it is abolished, relator contends and emphasizes that together these sections establish new departments as successors to the departments in existence and in this connection provide that the "Labor and Industrial [relations] Commission shall be the successor to the Industrial Commission * * *." All this means, in the context "successor" is used, is that the commission, as a corporate body or entity [7] in charge of the department of labor and industrial relations, shall become or be known and designated as "the labor and industrial relations commission." There is no indication that the word refers to or means the office of a member, as distinguished from the commission, the corporate entity. So far as we can determine from the words used, the effect, legal and practical, of § 49 is to give the commission in charge of the department constitutional instead of statutory standing and authority, and to change its name to that of the department it supervises. Nor, for that matter, is it clear that the industrial commission itself is in any true sense "abolished" by the amendment.

■ Subsection 1 of § 8 of the reorganization act does, as we have seen, say that the industrial commission is abolished. But that effect, if accomplished, is only in connection with a simultaneous transfer of not only all its powers, duties and functions to the successor but also its members. The functions, duties and powers of the commission and those of the office of commissioner and chairman were continued as they exist-

ed before (and exist today) under chapter 286. In these circumstances, the effect of a declaration that a commission is abolished and shall be succeeded by another is, if anything, nothing more than a mere colorable abolition; it is not an abolition in fact. This subsection does not even purport to abolish the offices of members of the commission. On the contrary, it continues the offices and provides that persons in office on the effective date of the act shall be members of the labor and industrial relations commission. In addition, it specifically provides that members previously appointed shall serve the remainder of their statutory terms of office.

■ Chapter 286 was not repealed by the 1972 amendment or the 1974 reorganization act. The chapter is still alive and functioning as the code by which the commission is guided in its functions. The length of the term of office of a member of the commission is, by § 49 of the amendment, locked into that provided by one of the sections of that chapter (§ 286.020) and may not be changed, except by another amendment of the constitution. The wording of § 49 of the amendment, especially that fixing the number of members, their prior interest qualifications, political party affiliation and designation of the chairman, is almost identical to that used in one of the sections (§ 286.010) of that chapter. The only changes in the functions of the office of member of the commission from that previously performed is that they were relieved from direct responsibility as members of the board of rehabilitation when those duties were assigned to the director of the division of workmen's compensation within the department, and duties and functions were added in connection with the board of mediation and the commission on the status of women when that board and commission were transferred to the department. In other words, the duties, powers and func-

---

7. See § 286.060 providing that it may sue and be sued as such and prescribing its general powers, duties and jurisdiction.

tions of the office of member and chairman of the commission, by whatever name the commission may be designated, are, in substance, the same today they were before the 1972 amendment. The sum and substance of what we have said is that the office is the same. Its duties were continued. Hence, it was not in fact abolished by either the constitutional amendment or the reorganization act.

█ It is true, as relator says, that there is no authority in the amendment for members of the industrial commission to succeed to membership on the new commission. But that is not to say that the amendment prohibits legislative provision for such succession. It does not. Relator concludes from his premise of no explicit constitutional authority for succession, that the offices of members were therefore vacant upon their "creation," thus calling into play the exclusive power of the governor to fill those "vacancies." This department which relator describes as "new" was, like the then existing department, "created" by legislative action; it was not created by the constitutional amendment under the terms of which its existence would have commenced July 1, 1974. It was created by statute (the reorganization act) effective May 2, 1974, under the provisions of which such succession is not only authorized, *it is effected.* No vacancy in office existed calling for the exercise of the governor's appointive powers. Hence, there was no conflict with those powers.

█ Moreover, there could be no conflict in this case with the powers of appointment granted the governor by §§ 17 and 49 of Article IV, because respondent was, as re-

quired by § 286.010 from which § 49 of the amendment was copied, appointed in 1971 by the then governor by and with the advice and consent of the senate. For the reasons stated, ouster should be denied.

Accordingly, ouster is denied and the proceeding dismissed.

MORGAN and BARDGETT, JJ., concur.

DONNELLY, C. J., and HOLMAN, J., concur in result.

SEILER, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge (dissenting).

The question before us is whether respondent James J. Butler is usurping the office of member of the labor and industrial relations commission.[1] Resolution of the question depends upon the application and interpretation of the amendments to Art. IV of the state constitution adopted at the election of August 8, 1972, dealing with the reorganization of the executive branch of state government. It is axiomatic that if the office of member and chairman of the industrial commission was abolished by the constitutional amendments, then the fact that the 1972 reorganization act attempted to preserve the office to respondent is of no significance. The act must yield to the constitutional amendment. And if the old commission was superseded and a new commission—the labor and industrial relations

1. It should be pointed out that while respondent was appointed a member of the old industrial commission in 1971 by Governor Hearnes, long before the constitutional reorganization amendments were adopted and before there was any labor and industrial relations commission in existence, he also was appointed by Governor Bond on June

27, 1974, as a member of the new labor and industrial relations commission. The senate was not in session at the time of Governor Bond's appointment, so respondent's authority to act commenced immediately upon his appointment, as so stated in Sec. 51, Art. IV, infra. The difficulty, however, arises from the fact that when the senate next

commission—was created by the constitutional amendments, then a vacancy existed, ipso facto, in the offices of the commissioners of the new commission upon its creation, State ex rel. Brown v. McMillan, 108 Mo. 153, 18 S.W. 784, 786 (1891). This is not disputed.

Since, as said, the constitutional amendments take precedence over the reorganization act, we must look first to the amendments for a solution of the problem, because if the answer is found in the amendments we need look no further. Of the seventeen new sections of Art. IV adopted at the August 8, 1972 election, the answer lies in these three, which read as follows:

"Section 12. The executive department shall consist of all state elective and appointive officials and employees except officials and employees of the legislative and judicial departments. In addition to the governor and lieutenant governor there shall be a state auditor, secretary of state, attorney-general, a state treasurer, an office of administration, a department of agriculture, a department of conservation, a department of natural resources, a department of elementary and secondary education, a department of higher education, a department of highways, a department of transportation, *a department of labor and industrial relations,* a department of consumer affairs, regulation and licensing, a department of public safety, a department of revenue, a department of social services, and a department of mental health. In addition to the elected officers, there shall not be more than fourteen departments and the office of administration. *The general assembly may create by law one department,* in addition to those named, provided that

the department shall be headed by a director or commission appointed by the governor on the advice and consent of the senate. The director or commission shall have administrative responsibility and authority for the department created by law. *Unless discontinued* all present or future boards, bureaus, commissions and other agencies of the state exercising administrative or executive authority shall be assigned by law or by the governor as provided by law to the office of administration or to one of the fourteen administrative departments to which their respective powers and duties are germane. *The department enumerated in this section shall be established on July 1, 1974, as successors to the departments in existence at the time of the adoption of this section ;* except that they may be established by law prior to that date." (Emphasis supplied.)

"Section 49. The department of labor and industrial relations shall be in charge of a Labor and Industrial Relations Commission consisting of three members *appointed by the governor* by and with the advice and consent of the senate. One member of the commission shall be a person who, on account of his previous vocation, employment, affiliation or interests shall be classified as a representative of employers, and one member who, on account of his previous vocation, employment, affiliation or interests shall be classified as a representative of employees, and one member, who, by reason of his previous activities and interests shall be classified as a representative of the public and who is licensed to practice law in the state of Missouri; except that not more than two members of the commission shall be of the same political party. A member of the commission shall be

convened, as it did on November 19, 1974, it failed to give its advice and consent to the appointment within thirty days thereafter and so, as provided by Sec. 51, Art. IV, respondent's authority to act terminated,

commencing December 20, 1974. The majority opinion avoids this constitutional obstacle by holding there was no vacancy for Governor Bond to fill, so that the June 27, 1974, appointment was futile.

designated by the governor as the chairman. *The Labor and Industrial Commission shall be the successor to the Industrial Commission* and the terms of members shall be as provided by law for the Industrial Commission." (Emphasis supplied.)

"Section 51. *The appointment of all members of administrative boards and commissions* and of all department and division heads, as provided by law, *shall be made by the governor.* All members of administrative boards and commissions, all department and division heads and all other officials appointed by the governor shall be made only by and with the advice and consent of the senate. The authority to act of any person whose appointment requires the advice and consent of the senate shall commence, if the senate is in session, upon receiving the advice and consent of the senate. If the senate is not in session, the authority to act shall commence immediately *upon appointment by the governor but shall terminate if the advice and consent of the senate is not given within thirty days after the senate has convened in regular or special session.* If the senate fails to give its advice and consent to any appointee, that person shall not be reappointed by the governor to the same office or position." (Emphasis supplied.)

The old industrial commission and former department of labor and industrial relations were creatures of the general assembly and could have been changed or abolished by another general assembly.[2] They had no constitutional status. I cannot subscribe to the view expressed in the principal opinion that the department of labor and industrial relations specifically named in Sec. 12, Art. IV, adopted by the people at the August 8, 1972 election, as one of the thirteen departments of the executive branch of state government, was already in existence before adoption of the constitutional amendment or that it did not come into existence by virtue of the constitutional amendment but instead was created by the reorganization act. Prior to the adoption of the amendment there was no such creature or entity as a constitutionally established department of labor and industrial relations in Missouri. Once the constitutional amendment was adopted, the department of labor and industrial relations came into being as a constitutional department of the executive branch, headed by a labor and industrial relations commission, as provided by Sec. 49, Art. IV, also adopted at the August 8, 1972 election. The new constitutional department was to be established on July 1, 1974, as successor to the department in existence at the time Sec. 12 was adopted, which, to repeat, was August 8, 1972. On that date the only department in existence was the statutory one created in 1945. By virtue of Sec. 12, the legislature had authority to start or establish operation of the new department prior to July 1, 1974, but the legislature did not have authority to create the new department. That had already been done by the people in the August 8, 1972 election and had the legislature done nothing the new department would nevertheless have been in full bloom and existence.

In addition, Sec. 12, supra, states specifically that there is only one department which the general assembly can create and that is the as yet unnamed and unenacted single department which is authorized in addition to the thirteen named departments and the office of administration. Even the authority to create this one department in the future comes from the amendment adopted by the people. Certainly, then, by no stretch of the imagination can it be said

---

**2.** The old department of labor and industrial relations and the old industrial commission of Missouri were established by statute in 1947, L.1945, p. 1101, Sec. 1 (Sec. 286.010, V.A.M.S.). At the same time the former Workmen's Compensation Commission was done away with, L.1945, p. 1996.

that Sec. 12 gives the general assembly authority to create the department of labor and industrial relations. That creation was the act of the people and the people alone, by virtue of the August 8, 1972 amendments to the constitution.

The new department of labor and industrial relations and the new labor and industrial relations commission are creatures of the amended state constitution, adopted by the vote of the people, and in common with other constitutional provisions operate as a limitation on the power of the legislature. Neither department nor commission can now be changed or abolished by the legislature, but only by a vote of the people. They are of constitutional, not merely statutory, stature. While much of the language of Sec. 49 tracks exactly the language of Sec. 286.010, supra, as to the diversity of interests to be represented by the three commissioners of the labor and industrial relations commission (one to be representative of employers, one of employees and one of the public) and the terms of the members are to be as provided by law for the industrial commission, there would be no purpose in the people enacting a constitutional amendment if it served merely to declare what previously existed. In my opinion, Sec. 49 has no such redundant purpose.

Note, too, that the former industrial commission was limited in its makeup to persons who had resided in this state for at least five years immediately prior to appointment, Sec. 286.010, supra. The new labor and industrial relations commission has no such limitation. Persons would be eligible for the new commission who were not for the old. Art. IV, Sec. 49, caps it by expressly providing that the labor and industrial relations commission shall be the "successor" to the industrial commission. Unless there is something to suggest otherwise, we are to give the words of the constitution their ordinary meaning. As said in State ex inf. Dalton v. Dearing, 364 Mo.

475, 263 S.W.2d 381, 385 (banc 1954) quoting with approval, 1 Story, Constitution, Sec. 451: "It is a settled rule of construction that 'every word employed in the constitution is to be expounded in its plain, obvious, and common-sense meaning, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. . . .' "

The plain, obvious and common sense meaning of successor is one who follows and takes the place of another, Webster's Third New International Dictionary, p. 2282 (1961); The Oxford English Dictionary, Vol. X, p. 80 (1938); Black's Law Dictionary, p. 1600 (Rev. 4th ed. 1968). It does not mean the continuation of the old or former. The principal opinion treats the express provision in Sec. 49 that "The Labor and Industrial Commission shall be the successor to the Industrial Commission" as meaning no more than that the old commission shall henceforth be known by a new name with the same old members, but this attributes an awkward and unnatural use to the word "successor". It is not ordinarily used that way and so to treat it disregards the above stated rule of constitutional construction.

The majority opinion necessarily must dispose of that portion of the reorganization act which states "and the industrial commission is abolished." It does this by saying that if it amounts to anything it is a "mere colorable abolition" and that in any event the offices of members of the commission were not abolished. As to this latter, it seems self-evident that if the industrial commission were abolished, it would take along with it the offices of its members with no need to mention them specifi-

cally. It is difficult to envision a commission being abolished and yet the offices of its members surviving. The members would then become officers of a non-existent commission, a most unusual legal concept.

As to the "mere colorable" abolition, I note that the words actually used by the legislature were, as said above, "the industrial commission is abolished." I also note that the legislature used these same words "is abolished" in the reorganization act to abolish some twenty-nine other commissions, departments, boards, divisions, councils, sections and offices. If "is abolished" accomplishes only a "mere colorable" abolition and "not an abolition in fact", then there are literally hundreds of persons whose offices in state government have not been abolished at all and some thirty different commissions, departments, divisions, etc., which are still in existence, despite the avowed purpose of the reorganization act to make a functional reorganization of the executive branch of state government into a streamlined structure. I do not believe this was the intent of the people in adopting the reorganization amendments, nor can I believe that the legislature labored under any such misapprehension as to the meaning of the word "abolished". When the legislature used the word over and over again in the reorganization act, I think it used it in its common, everyday sense—to do away with.

Sec. 8, subsection 1 of the reorganization act provides "All the powers, duties and functions of the industrial commission are transferred by type I transfer to the labor and industrial relations commission and the industrial commission is abolished."

Sec. 8, subsection 1, as interpreted by the majority opinion, reads this way: "The industrial commission is not abolished, but shall be continued and shall be renamed the labor and industrial relations commission. It shall continue to possess the same powers, duties, and functions and the same are not transferred to another agency."

If the general assembly had intended by Sec. 8, subsection 1 merely to continue the old industrial commission with the same powers, duties and functions, changing only its name, is it not reasonable to conclude that it would have said so? If it did not intend to abolish anything or transfer any powers, duties or functions from one organization to a different one, why did it say "the industrial commission is abolished"? If the only change was to rename the existing commission and there was no new and separate commission, why did the general assembly speak of transferring the powers, duties and functions?

It is suggested that when the general assembly said "the industrial commission is abolished" it meant exactly what it said. It was not simply renamed. It was abolished. Otherwise, the general assembly would have ordered that the existing commission be transferred to the new department pursuant to Sec. 12, Art. IV, which provides that "*Unless discontinued* all present . . commissions . . . shall be assigned by law . . . to one of the fourteen administrative departments . . . ." (Emphasis supplied.) The general assembly did not transfer the old commission to any department. The legislature abolished it and then provided that its powers, duties, and functions were transferred to a new labor and industrial relations commission.

Finally, a few words should be said about the unconstitutionality of that portion of Sec. 8, subsection 1 of the reorganization act which purports to name the members of the old industrial commission as the members of the new labor and industrial relations commission, thereby circumventing the appointment power of the governor. Sec. 51, Art. IV, supra, provides the appointment of all members of commissions shall be made by the governor by and with the advice and consent of the senate. The

reorganization act, Sec. 1; subsection 6, states the head of each department shall be appointed, as provided by the constitution, by the governor with the advice and consent of the senate. Sec. 1, subsection 8(1) directs that "The governor shall appoint the heads of the departments as soon as possible, after the effective date of this act." Sec. 17, Art. IV, adopted in the 1945 constitution, and untouched by the August 8, 1972 amendments, already provided that the heads of all departments shall be appointed by the governor by and with the advice and consent of the senate, so it must be that Sec. 51 was enacted by the people through an abundance of caution to be certain that the governor, whoever he was,[3] would appoint the heads of the new departments under the sweeping reorganization authorized by the constitutional amendments adopted August 8, 1972. Certainly there was no indication of any intention on the part of the people to reduce the governor's appointment powers.

I do not believe the fact that respondent, in the year 1971, was appointed by Governor Hearnes to the old industrial commission, with the advice and consent of the senate, can constitute either appointment by the governor, or advice and consent of the senate therein, to the new labor and industrial relations commission created in 1972. If so, then by the expedient of so providing in the reorganization act (or amendment thereof) the general assembly can carry forward into the new departments every department head under the old structure. It could have, for example, (although it did not) have carried forward the members of the old commission on higher education to the new coordinating board for higher education, and the members of the old state mental health commission to the new state mental health commission. In

my opinion, the voters intended by adopting Sec. 51, Art. IV (which so provides) that the governor should appoint the heads of all the new departments and the attempt made in the reorganization act to circumvent his appointment power over the new labor and industrial relations commission, which is the head of the new department by the same name, is therefore unconstitutional.

For the foregoing reasons, I respectfully dissent.

**3.** At the time the reorganization amendments were adopted, it could not be known who the new governor would be or of what political party. There was certain to be a new governor, however, as the incumbent was not eligible for re-election under the constitution and, of course, was not a candidate.