Philip R. Dodge, M.D., Chairman Missouri Mental Health Commission St. Louis Children's Hospital 500 South Kingshighway St. Louis, Missouri 63110
Dear Dr. Dodge:
This opinion is in response to the request this office received from Harold P. Robb, M.D., in his capacity as Director of the Department of Mental Health asking:
 "What are the statutory qualifications, if any, for the Director of the Department of Mental Health?"
Section 9, subsection 1 of the Omnibus State Reorganization Act of 1974 (C.C.S.H.C.S.S.C.S.S.B. No. 1, 77th General Assembly, First Extraordinary Session) provides in pertinent part:
 "There is hereby created a department of mental health to be headed by a mental health commission who shall appoint a director, by and with the advice and consent of the senate. The director shall be the administrative head of the department and shall serve at the pleasure of the commission and be compensated as provided by law for the director, division of mental health. . . ."
In Opinion No. 161, 1974 (copy enclosed), this office concluded that a portion of the above statute was in conflict with Article IV, Section 37(a) of the Missouri Constitution, as amended, insofar as it provided that the Mental Health Commission was the head of the Department rather than the Director. We further concluded that the invalidity of this portion did not affect the remainder of Senate Bill No. 1 since such portion was severable.
In our view, the answer to your question is determined by whether the General Assembly in enacting the above section intended to engraft the statutory qualifications for the Director of the Division of Mental Health contained in Section 202.035, RSMo 1969.
Section 202.035 provides in pertinent part:
 "1. The chief administrative officer of the division of mental health shall be the director of the division who, effective January 1, 1958, shall be appointed by the state mental health commission for a term of four years and shall be eligible for reappointment. The director shall devote his full time to the office.
 "2. The director shall be a physician competent in the field of mental health, administration and program planning, and the salary of the director shall be set by the commission but shall not exceed thirty-five thousand dollars per year."
It is a well-settled maxim of statutory construction to seek the intention of the lawmakers. Such intent should be ascertained, if possible, from the words used and should ascribe to the language used in its plain and rational meaning. State ex rel. Wright v.Carter, 319 S.W.2d 596 (Mo. 1958). It is also well settled that a court in construing a statute is not to supply, insert, or read words into the statute unless there is an omission plainly indicated and unless the statute as written is incongruous, unintelligible, or leads to absurd results. State ex rel. May Department Stores Co. v. Weinstein,395 S.W.2d 525 (St.L. Ct.App. 1965). There is another maxim of statutory construction known as "expressio unius est exclusio alterius," namely that the mention of one thing in a statute implies the exclusion of another thing. DePoortere v. Commercial Credit Corp.,500 S.W.2d 724 (Spr.Ct.App. 1961).
A review of Article IV, Section 37(a) of the Missouri Constitution, as amended, and the Omnibus State Reorganization Act demonstrates that the Mental Health Commission, the Department of Mental Health, and the Director of the Department are new creations. Section 9, subsection 2 of the Reorganization Act created a new Mental Health Commission and specifically terminated the terms of the prior Mental Health Commission existing by virtue of Section 202.031, RSMo 1969. Subsection 3 of Section 9 abolished the Division of Mental Health, Department of Public Health and Welfare, and transferred by Type I transfer all the powers, duties, and functions of the Division and the Director of the Division and other officials of the Division to the Department of Mental Health. A Type I transfer was a transfer of all of the authority, powers, duties, functions, records, personnel, property, etc., of an existing department or division to the director of the new department for assimilation and assignment within the department as the director shall determine.
The conclusion that the Reorganization Act created the new position of the Director of the Department of Mental Health is reinforced by the wording of subsection 1 of Section 9. The new Mental Health Commission appointed Dr. Robb as the Director on June 28, 1974. This appointment was confirmed by the Senate on December 17, 1974 (Senate Journal, 77th General Assembly, 1974-1975, pp. 103-105). Furthermore, the Director of the Division of Mental Health had a four-year term of office and was not confirmed by the Senate; but now the Director of the Department serves at the pleasure of the Mental Health Commission and can be removed by either the Commission or the Governor (Opinion No. 215, 1974, copy enclosed). Although Dr. Robb was the Director of the Division of Mental Health at the time of the effective date of the Reorganization Act, he did not by virtue of that position become Director of the Department of Mental Health. He became Director when he was appointed by the Mental Health Commission and confirmed by the Missouri Senate.
This conclusion is consistent with the decision of the Missouri Supreme Court in State ex inf. Danforth v. Butler, 524 S.W.2d 1 (Mo. Banc 1975). There the court held that the Chairman of the Industrial Commission existing under Missouri law prior to the Reorganization Act continued in office. The decision was partially based on the fact that the legislature in Section 8 of the Reorganization Act provided that the members of the Industrial Commission on the effective date of the Reorganization Act would become members of the new Labor and Industrial Relations Commission and the terms of the members shall be the same as provided by law for the Industrial Commission. Additionally, Butler was concerned with virtually the same constitutional department both before and after reorganization, where here there is a new constitutional department not existing as a department prior to reorganization.
As noted above, the legislative intent is to be ascertained from the words and phrases used. Words are not to be inserted or read into a statute unless the omission is plainly indicated and unless the statute as written is incongruous, unintelligible, or leads to absurd results. Here, the legislature created a new position which was filled by a new appointment. The Reorganization Act is silent as to any qualifications for the Director of the Department of Mental Health.
We have also considered whether the provisions of Section 1, subsection 14(1) of the Reorganization Act apply. Subsection 14 (1) provides:
 "Unless otherwise provided, where this act establishes a method of appointment other than presently provided by law, those persons serving terms fixed by law shall serve out the remainder of the term for which they were appointed and on the expiration of terms, after July 1, 1974, the appointment shall be made as provided herein. The qualifications, terms, compensation and related matters will remain as in present law except as specifically altered by this act."
In our view, this subsection is not applicable since we are dealing with a new constitutional agency and a new position which did not exist prior to reorganization. Also, as noted previously, Dr. Robb as Director of the Division of Mental Health did not become Director of the Department by virtue of that fact. He became Director of the Department when formally appointed on June 28, 1974, by the new Mental Health Commission as created by Section 9, subsection 3 of the Reorganization Act.
In Opinion No. 236, 1974 (copy enclosed), this office concluded that the Director of the Division of Credit Unions, Department of Consumer Affairs, Regulation and Licensing, was a new position and did not have to meet the qualifications of the Supervisor of Credit Unions and all the duties relating to credit unions vested in the Commissioner of Finance were transferred by Type II transfer to the Director of the Division.
The only difference we can perceive is that here the legislature provided that the Director of the Department of Mental Health was to be compensated as provided by law for the Director of the Division of Mental Health. Had the legislature intended to impose the qualifications required for the Director of the Division on the Director of the Department (a new position), we believe it would have expressly done so. But it did not. We believe the legislature cross referenced to the compensation provision of Section 202.035 to avoid the effect of Section 1, subsection 6, subdivision 7 of the Reorganization Act which provides that the directors of the departments are to be compensated at the rate of $30,000 per year. Otherwise, the director of the new department would be compensated less than the amount of salary that existed for the director of the predecessor agency. The fact that the General Assembly cross referenced to the compensation provisions but did not include the qualifications is conclusive, in our view, of a legislative intent not to require the Director of the Department to be a physician; particularly when the legislature in Section 2, subsection 1 of the Reorganization Act specifically provided that the Director of the Department of Agriculture shall possess the qualifications provided by law for the Commissioner of Agriculture.
CONCLUSION
Therefore, it is the opinion of this office that the Director of the Department of Mental Health as appointed by the Mental Health Commission and confirmed by the Senate, is not required to be a physician competent in the field of mental health, administration, and program planning.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Daniel P. Card II.
Yours very truly,
 JOHN C. DANFORTH Attorney General
Enclosures: Op. No. 161 4-4-74, Robb
 Op. No. 215 6-12-74, Bond
 Op. No. 236 6-13-74, Bond